J-A08046-26

2026 PA Super 140

| | | |
|---|---|---|
| IN RE: S.C., AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MICHAEL R. COVENEY | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2335 EDA 2025 |

Appeal from the Order Entered August 5, 2025
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): 1522-1766

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and KING, J.

OPINION BY LAZARUS, P.J.: **FILED JULY 1, 2026**

Michael R. Coveney, guardian of the person and estate of S.C., an incapacitated person, appeals from the order, entered in the Court of Common Pleas of Chester County, Orphans' Court Division, denying, in part, his petition to authorize a medical assistance spend-down, sale of a car, and payment of attorney's fees. After careful review, we affirm.

By final order dated October 4, 2022, the Honorable Katherine B.L. Platt declared S.C. to be an incapacitated person as a result of her diagnosis of dementia and appointed her nephew, Coveney ("Guardian"), as plenary guardian of her estate and person. The final order provided, inter alia, that:

> The Guardian(s) of the Estate shall take all actions necessary to obtain and/or maintain medical insurance for [S.C.], including under the Medical Assistance Program, **if applicable**.

Final Order, 10/4/22, at 4 (emphasis added).

On May 14, 2025, Guardian filed a "Petition to Authorize Medical Assistance Spend[-]Down, Sale of Car, and Payment of Attorney's Fees." In the petition, Guardian averred that S.C. was currently on medical assistance and that Guardian wished to keep her eligible for such assistance. *See* Petition, 5/14/25, at ¶¶ 6-7. Guardian alleged that he had recently sold S.C.'s home and received net proceeds in the amount of $524,611.89, which were currently held in counsel's escrow account. Guardian stated that S.C. had other assets collectively valued at approximately $1,074,839.00. *Id.* at ¶ 14. Guardian averred that S.C.'s income consisted of the following:

- Empower Retirement annual payment of $23,868.49;
- Fidelity IRA annual distribution of $8,000.00;
- Social Security monthly payments of $1,923.20;
- MetLife pension monthly payments of $1,822.68;
- Verizon stock quarterly dividends of $298.00;
- RTX stock quarterly dividends of $32.13; and
- Wabtec stock quarterly dividends of $11.75.

*Id.* at ¶ 15. According to Guardian, S.C.'s monthly income totals approximately $6,515.22. *See* Brief of Appellant, at 7. Guardian averred that, if he is not authorized to enter into a spend-down plan, S.C. would lose her medical assistance benefits due to being "over[ ]resourced." *Id.* at ¶ 18.

The Orphans' Court held a hearing on August 4, 2025, at which time counsel explained Guardian's plan as follows:

> [COUNSEL]: So[,] in terms of a spend[-]down[,] what we would set up would be a Medicaid[-]compliant gifting annuity where

essentially you would be able to follow up her estate plan, which I did bring with me.[1]  You would set up a Medicaid[-]compliant annuity and put approximately half of that amount in there.  So[,] it would be around $700,000[.00] and then the other $700,000[.00] you would be able to gift.

N.T. Hearing, 8/4/25, at 7.

On August 5, 2025, the Orphans' Court entered an order authorizing Guardian to sell S.C.'s car and pay counsel fees and denying Guardian's request to engage in a Medicaid spend-down plan.  In doing so, the court noted that "it is the fiduciary duty of the Guardian of an Incapacitated Person's

_____

[1] S.C.'s estate plan is not contained in the certified record on appeal.  Under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.  **Commonwealth v. Kennedy**, 868 A.2d 582, 593 (Pa. Super. 2005).  **See** Pa.R.A.P. 1921 ("The original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the  lower court shall constitute the record on appeal in all cases.").  "The emphasis on the certified record is necessary because, unless the trial court certifies a document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record."  **Commonwealth v. Preston**, 904 A.2d 1, 6-7 (Pa. Super. 2006).  "Simply put, if a document is not in the certified record, the Superior Court may not consider it."  **Id.** at 7 (citation omitted).  Here, the certified record contains a "Praecipe to File and Impound Original Last Will and Testament of [S.C.]," but the will itself is not attached.  Nor is the will or any other evidence relating to S.C.'s estate plan included as an exhibit presented to the court either as an attachment to the petition or at the hearing in this matter.  While S.C.'s will is included in the reproduced record, we have "no way of knowing whether [the will] was duly presented to the [Orphans' Court] or whether it was produced for the first time on appeal[.]"  **Id.**  Indeed, it appears that the will was never presented to the Orphans' Court.  Accordingly, we may not consider the document.

. . . Estate to expend income for the 'care and maintenance of the incapacitated person.'" Order, 8/5/25, at 1 (unpaginated), citing 20 Pa.C.S.A. §§ 5521 and 5536.

Guardian filed a motion for reconsideration, which the Orphans' Court denied, followed by a timely notice of appeal. Both Guardian and the Orphans' Court have complied with Pa.R.A.P. 1925. Guardian raises the following claims for our review:

> 1. As a matter of law, is [Guardian] permitted to spend[ ]down resources impoverishing ward, in conformity with federal law and state law, in order to preserve the ward's current Medicaid benefits?
>
> 2. As a matter of law, did the [Orphans' Court] commit an error in issuing an order that directly conflicts with the final order appointing [G]uardian, setting up a scenario where [Guardian] violates the final order if he does not engage in [a] Medicaid spend-down and violates the appealed order if he does?[2]

Brief of Appellant, at 1 (unnecessary capitalization omitted).[3]

_____

[2] We note that, contrary to Guardian's assertion, the final order does not require that Guardian qualify S.C. for Medicaid; it simply directs that he "take all actions necessary to obtain and/or maintain medical insurance for [S.C.], including under the Medical Assistance Program, **if applicable**." Final Order, 5/29/24, at 4 (emphasis added). In its opinion, the Orphans' Court observed that S.C. "has always had the means and resources to pay for private medical insurance" and noted that it "[did] not understand why [Guardian] chose to apply for Medicaid instead of putting [S.C.] on private insurance." Orphans' Court Opinion, 10/13/25, at 6. We concur with the Orphans' Court's assessment and will address this claim no further.

[3] Pennsylvania Rule of Appellate Procedure 2119 requires that

*(Footnote Continued Next Page)*

When an appellant challenges a decree entered by the [O]rphans' [C]ourt, our standard of review requires that we be deferential to the findings of the [O]rphans' [C]ourt.

[We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [O]rphans' [C]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Schwartz*, 275 A.3d 1032, 1033–34 (Pa. Super. 2022),

quoting *In re Staico*, 143 A.3d 983, 987 (Pa. Super. 2016).

Relevant to this appeal, we observe the following:

---

[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part— in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation to authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). We note with displeasure that the argument section of Guardian's brief is divided into sections that in no way correspond to the two issues raised in the statement of questions involved. "This Court has held that the rules of appellate procedure are mandatory, not [directory,] and it is within our discretion to dismiss an appeal when the rules of appellate procedure are violated." *Jacobs v. Jacobs*, 884 A.2d 301, 305 (Pa. Super. 2005) (citation and quotation marks omitted). "However, if the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal." *Id.* Here, we conclude that, while Guardian's brief is somewhat disjointed, rambling, and lacking in relevant legal support, Guardian's failure to comply with the rules does not impede our review to such an extent that we are unable to address the merits of the instant appeal. We, nevertheless, remind counsel that conformance with the appellate rules is mandatory and failure to comply may result in the dismissal of future appeals.

A fiduciary duty is the highest duty implied by law. ***Miller v. Keystone Ins. Co.***, [] 636 A.2d 1109, 1116 ([Pa.] 1994) (Cappy, J., dissenting). A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests[.] ***See Basile v. H & R Block, Inc.***, [] 761 A.2d 1115, 1120 ([Pa.] 2000); ***Young v. Kaye***, [] 279 A.2d 759, 763 ([Pa.] 1971) ("When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage."); ***Sylvester v. Beck***, [] 178 A.2d 755, 757 ([Pa.] 1962); ***McCown v. Fraser***, [] 192 A. 674, 676–77 ([Pa.] 1937); ***In re Null's Estate***, [] 153 A. 137 ([Pa.] 1930)[;] ***see also*** Black's Law Dictionary (10th ed. 2014) (defining [] fiduciary duty as "a duty to act with the highest degree of honesty and loyalty toward another person and in the best interest of the other person"). . . .

In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners are recognized examples. ***See, e.g.***, ***McCown***[, 192 A. at] 676–77[;] ***Young***, 279 A.2d at 763. The unique degree of trust and confidence involved in these relationships typically allows for one party to gain easy access to the property or other valuable resources of the other, thus necessitating appropriate legal protections.

***Yenchi v. Ameriprise Fin., Inc.***, 161 A.3d 811, 819–20 (Pa. 2017).

Guardianships of incapacitated persons are governed by Chapter 55 of the Probate, Estates, and Fiduciaries ("PEF") Code, which vests in the Orphans' Court continuing supervisory authority over guardians and their wards. ***See*** 20 Pa.C.S.A. §§ 5501-5555; ***see also id.*** at § 711(10) (providing for mandatory jurisdiction of Orphans' Court Division over incapacitated persons' estates). In particular, section 5536(a) requires court approval for all expenditures of principal of the guardianship estate. ***See*** 20 Pa.C.S.A. § 5536(a) (court, for cause shown, may authorize or direct payment of any or

all income or principal of estate for care, maintenance, or education of incapacitated person). Section 5536(b) authorizes the court, for good cause shown, to substitute its judgment for that of the incapacitated person with respect to estate planning, including the power to make gifts. *See id.* at 5536(b)(1). However, before doing so, the court must be "satisfied that assets exist which are not required for the maintenance, support[,] and well-being of the incapacitated person." *Id.* at § 5536(b). The court is further limited in its discretion insofar as the statute limits gifting to a plan "which results in minimizing current or prospective taxes, or which carries out a lifetime giving pattern." *Id.* To the extent they may be ascertained, the court is required to consider "the testamentary and inter vivos intentions of the incapacitated person[.]" *Id.*

Against this backdrop, we turn to the claim raised by Guardian on appeal. Guardian asserts that the court erred as a matter of law in not permitting Guardian to spend down S.C.'s resources, in conformity with federal law and state law, in order to preserve S.C.'s current Medicaid benefits. Guardian asserts that "there is no rational reason to treat [S.C.] differently and not give her the same rights to spend down her assets under federal and state law as competent citizens can." Brief of Appellant, at 11. Guardian argues "[i]t would also be wrong to deny [S.C.] the opportunity to protect her estate by engaging in medical assistance planning by any means the law would allow, including by distributing [her] funds as she would have if she had the capacity to do it." *Id.* at 12. Guardian asserts:

> In the same way that taxpayers are required to pay taxes, but are not required to pay more taxes than absolutely necessary, and are not required to order their affairs so as to pay the greatest amount of taxes, wards in need of long-term care should not be required to pay the highest rates for the care that they need, nor should they be prevented from ordering their affairs to continue to receive all the government benefits for which they are eligible or could easily make themselves eligible.

*Id.* at 39. Guardian alleges that the spend-down plan "would **save** [**S.C.'s**] **heirs** a substantial amount of money when [S.C.] dies." *Id.* at 13 (emphasis added).

Guardian argues that it is "time to bring Pennsylvania law up to date[,] taking into consideration now what the New Jersey Supreme Court said in" *In the Matter of Mildred Keri*, 853 A.2d 909 (N.J. 2004). Brief of Appellant, at 16. There*,* an incompetent's court-appointed legal guardian sought approval for a Medicaid spend-down plan, including a payment of $92,000.00 to be shared equally between the guardian and his brother, the sole heirs named in the incompetent's will. An additional $78,000.00 remained from the guardian's sale of the incompetent's home, which amount was earmarked to pay the incompetent's nursing home bills during the period of Medicaid ineligibility, i.e., the transfer penalty triggered by the transfer for less than fair market value of the $92,000.00 outright payment to the sole heirs. The New Jersey Supreme Court adopted the test set forth in *In re Trott*, 288 A.2d 303 (N.J. Ch.Div. 1972), which requires a guardian seeking to make gifts from the estate of an incompetent to establish five criteria:

> (1) the mental and physical condition of the incompetent are such that the possibility of her restoration to competency is virtually

nonexistent; (2) the assets of the estate of the incompetent remaining after the consummation of the proposed gifts are such that, in the light of her life expectancy and her present condition of health, they are more than adequate to meet all of her needs in the style and comfort in which she now is (and since the onset of her incompetency has been) maintained, giving due consideration to all normal contingencies; (3) the donees constitute the natural objects of the bounty of the incompetent by any standard . . .; (4) the transfer will benefit and advantage the estate of the incompetent by a reduction of death taxes; (5) there is no substantial evidence that the incompetent, as a reasonably prudent person, would, if competent, not make the gifts proposed in order to effectuate a saving of death taxes.

*In re Keri*, 853 A.2d at 914. The court approved the plan because it did not "interrupt or diminish [the] ward's care, involve[d] transfers to the natural objects of [the] ward's bounty, and [did] not contravene an expressed prior intent or interest." *Id.* at 916.

Guardian argues that "gifting an incapacitated person's assets in such a way as to avoid liability to government agencies is seen as a reasonable estate planning decision, particularly when estate planning documents are in place." Brief of Appellant, at 27. He asserts that, here, the proposed gifts would be made "in accordance with [S.C.'s] known wishes" and that, by engaging in a spend-down plan and "disposing of [S.C.'s] estate in this way, [G]uardian is acting in her best interest." *Id.* at 18. Guardian asserts that "[n]othing in the facts of the case sub judice would suggest that [S.C] would not want to avail herself of the same benefits that existing state and federal law already allow." *Id.* Guardian argues that, were the court to allow him to spend down S.C.'s assets, "[s]he will be in the same bed[,] at the same facility[,] cared

for by the same people[,] eating the same food[.]  Nothing will change for [S.C.] personally at all, whatsoever."  *Id.* at 39.

In its Rule 1925(a) opinion, the Orphans' Court noted that the "[G]uardian's first obligation is to ensure the incapacitated person's estate provides for that person first and foremost," and that the court "heard no evidence whatsoever to convince it that [S.C.] wanted to be placed on public assistance and have her assets given away in accordance with her will before her death." Orphans' Court Opinion, 10/13/25, at 8.  The court further opined that the federal and state medical assistance laws cited by Guardian do not support the proposition that "an unmarried incapacitated individual with no minor children should have their financial assets transferred to people so as to enable the incapacitated person to be enrolled in Medicaid."  *Id.*  Rather, the court stated that "all of [S.C.'s] resources should be maintained in a manner so that she receives the best possible medical insurance, and personal and medical care for the remainder of her life."  *Id.* at 7.  Finally, the court noted that it was not bound by *Keri* or any of the other non-precedential cases cited by Guardian.  *Id.* at 11.

In light of our deferential standard of review and the sparse record in this matter, we are constrained to affirm the Orphans' Court's order.  First and foremost, Guardian did not aver in his petition, much less present evidence at the hearing, that S.C.'s assets are not required for her maintenance, support, and well-being, and that the proposed spend-down scheme would either

"result[] in minimizing current or prospective taxes"[4] or "carr[y] out a lifetime giving pattern," as required under section 5536(b).[5]   Indeed, both the Orphans' Court record and Guardian's appellate brief are devoid of any evidence or argument that the proposed spend-down would in any way benefit S.C. or carry out her previously expressed wishes.   To the contrary, in his brief, Guardian as much as admits that he seeks primarily to benefit himself and his unspecified fellow heirs, stating that the spend-down plan "would **save [S.C.'s] heirs** a substantial amount of money when [S.C.] dies."   Brief of Appellant, at 20 (emphasis added).   This focus on benefitting S.C.'s heirs rather than S.C. herself is in clear contravention of Guardian's fiduciary duty as guardian of the estate—a duty that "requires a party to act with the utmost good faith in furthering and advancing **the other person's interests**[.]" **Yenchi**, 161 A.3d 819-20 (emphasis added).

Guardian's primary, overarching argument—that an incapacitated person should be able to engage in the same type of medical assistance

_____

[4] Guardian baldly asserts in his brief that, at its current valuation, upon her death, S.C.'s estate would be subject to a 15% rate of taxation, resulting in tax liability of $270,000.00.  **See** Brief of Appellant, at 13.  However, Guardian presented no evidence in the Orphans' Court regarding potential inheritance tax savings and, thus, we may not consider this argument on appeal.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[5] We note that, although the Orphans' Court record is devoid of testimonial or documentary evidence regarding S.C.'s pattern of lifetime giving (if any) or potential tax savings, counsel made certain to elicit testimony from Guardian regarding her attorney's fees and moved her $3,500.00 bill into evidence. **See** N.T. Hearing, 8/4/25, at 5.

planning as a fully competent person—is wholly unavailing. By definition, an incapacitated person lacks the ability to determine whether or not to engage in medical assistance planning and, thus, the Orphans' Court is empowered to substitute its judgment for such an individual, within the parameters established by statute, **and based on evidence presented by the guardian of the estate**. As noted above, Guardian has not cited any precedential Pennsylvania case law[6] in support of his position and, more importantly, has

_____

[6] Guardian cites to **In re Estate of Groff**, 38 Pa. D.&C. 2d 556 (O.C. Montg. 1965), to support his argument. **Groff**, which is a non-binding decision of the court of common pleas and was decided prior to the enactment of section 5536, involved a request by a guardian to engage in estate planning—not a Medicaid spend-down—on behalf of his ward, whose estate was substantial. The court noted that the guardian had "spent for his ward as many dollars of her income as there could be found ways to spend it, in the exercise of the utmost effort that could be made to provide for her everything that money can buy for a person in her unfortunate condition of mental health." **Id.** at 560. This included not only "the best available private accommodation" and health care, but also "things such as personal television and radio sets and whatever items of tangible personal property that would or might contribute to her comfort and enjoyment in any way." **Id.** Despite these expenditures, the guardianship estate had accumulated a substantial amount of surplus income, and the estate would, upon the ward's death, be subject to taxation in the "top bracket." **Id.** at 563. Thus, to reduce the gross taxable estate at the ward's death, the court authorized the guardian to continue the ward's established pattern of lifetime giving by distributing a portion of the estate's principal to her son, granddaughter, and daughter-in-law. Even accounting for the gifts of principal, the court found that it was "scarcely conceivable that funds . . . could become inadequate to provide the ward every necessity and luxury for the rest of her life, however long she may live." **Id.** at 565.

Conversely, here, Guardian's proposed spend-down would essentially render his ward indigent, dependent on the state for her essential needs, and without any funds of her own to provide for those things that might contribute to her comfort and enjoyment for the remainder of her lifetime.

failed to present any evidence demonstrating that S.C. would have made the decision to divest herself of nearly all of her assets—which currently amount to approximately $1.6 million, plus a substantial monthly income—in order to benefit Guardian and his fellow heirs. Although she permanently resides in a nursing facility, S.C.'s substantial assets could clearly benefit her for the remainder of her life by providing her with a higher quality of medical insurance and other activities and services from which she may be able to benefit and the cost of which would exceed the Medicaid personal needs allowance.[7]

Finally, we are unpersuaded by Guardian's suggestion that we adopt the test set forth in **Keri**. Section 5536 provides clear guidance for the Orphans' Court when called upon to substitute its judgment for an incapacitated person. Specifically, the court must be satisfied that: (1) assets exist that are not required for the maintenance, support, and well-being of the incapacitated person and (2) the plan results in either the minimization of current or prospective taxes or carries out a lifetime giving pattern. **See** 20 Pa.C.S.A. § 5536(b). Here, Guardian simply failed to present any evidence regarding

_____

[7] Pennsylvania's medical assistance law provides for a personal needs allowance for clothing and other personal needs, which is "deducted from a medical assistance-eligible person's gross income . . . for purposes of determining the amount that person must pay toward the cost of skilled health care and intermediate services or intermediate care while residing in a nursing facility." 62 P.S. § 443.8(a). As of January 1, 2025, the personal needs allowance is $60.00 per month. **See** Pennsylvania Department of Human Services Operations Memorandum #24-10-02, 10/22/24.

S.C.'s needs, the potential for tax minimization, or whether the proposed gifts would further a pattern of lifetime giving.[8] While there may be circumstances in which a Medicaid spend-down and concomitant gifting plan might be appropriate, here, in the complete absence of record evidence supporting the implementation of such a scheme, we can discern no basis to disturb the Orphans' Court's order. Accordingly, we affirm.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/1/2026

_____

[8] We note that in **Keri**, the guardian presented substantial evidence to the court, including monthly nursing home expenses, a detailed explanation of the spend-down plan, and testimony that "if not so ill, his mother would have approved of and undertaken such an estate planning strategy to preserve a significant portion of her assets for her two sons." **Keri**, 853 A.2d at 912. The record here is simply devoid of any such evidence.